FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL - 2 2008

JAMES R. LARSEN, CLERK
SPOKANE, WASHINGTON DEPUTY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA, )
                            )
              Plaintiff,    )
                            )       CR-08-0040-CI
      vs.                   )
                            )
JEREMY C. EVANS,            )       ORDER DEFERRING
                            )       PROSECUTION
              Defendant.    )

THIS MATTER, having come before this Court, the Court finds the Defendant has agreed to comply with the terms and conditions of the Deferred Prosecution Agreement, and has agreed to pay the cost of treatment or of any other conditions of this deferred prosecution; that the Court finds that the Defendant has stipulated to the admissibility of the facts contained in the written police report; that the Defendant has acknowledged the admissibility of the stipulated facts in any criminal hearing on the underlying offense or offenses held subsequent to revocation of the order granting deferred prosecution; that the Defendant's statements were made knowingly and voluntarily; and that the Defendant has knowingly and intelligently waived his trial rights.

NOW THEREFORE, IT IS HEREBY ORDERED:

1.  The Defendant is accepted for deferred prosecution;

2.  The Defendant shall comply with all the terms and conditions as set forth in the Agreement for Deferred Prosecution;

3.  The Defendant shall be not be supervised by the United States Probation Office during the deferral period.

_____        07-2-08
United States Magistrate Judge          Date

1 | James A. McDevitt
United States Attorney
2 | Eastern District of Washington
Stephanie A. Van Marter
3 | Assistant United States Attorney
Post Office Box 1494
4 | Spokane, WA 99210-1494
Telephone: (509) 353-2767
5 |

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL - 2 2008

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

6 | UNITED STATES DISTRICT COURT

7 | EASTERN DISTRICT OF WASHINGTON

8 | UNITED STATES OF AMERICA,

9 | Plaintiff,

CR-08-0040-CI

10 | vs.

11 | JEREMY C. EVANS,

UNSUPERVISED
DEFERRED PROSECUTION
AGREEMENT

12 | Defendant.

13 |

14 | **INTRODUCTION**

15 | Defendant, JEREMY C. EVANS, is reported to have committed a violation

16 | of federal law on or about December 17, 2007.

17 | A recitation of the factual background regarding this offense is contained in

18 | the police reports and has been accepted by the Defendant as accurate.[1] After an

19 | investigation of the offense and the Defendant's background, it appears that the

20 | interests of the United States, the Defendant's own interests, and the interests of

21 | justice will be served by the following procedure.

22 | On the authority of the Attorney General of the United States, by James A.

23 | McDevitt, United States Attorney for the Eastern District of Washington,

24 | prosecution in this District for this offense shall be deferred for a period of six (6)

25 | months from the date of the filing of this agreement and thereafter dismissed,

26 | provided the Defendant abides by the conditions and requirements herein outlined.

27 |

28 |

---

[1]The police reports are herein contained as Attachment A.

EVANS Unsupervised Deferred Prosecution Agreement - 1

1    On the authority of the Attorney General of the United States, by James A.

2  McDevitt, United States Attorney for the Eastern District of Washington,

3  prosecution in this District for this offense shall be deferred for a period of six (6)

4  months from the date of the filing of this agreement and thereafter dismissed,

5  provided the Defendant abides by the conditions and requirements herein outlined.

6

7                    **ADVICE AND ACKNOWLEDGMENT OF RIGHTS**

8    Defendant understands and acknowledges that he has the following rights:

9  1.  The right to be represented by a lawyer at all hearings ~~if I am a minor or~~

10      ~~when the Government is seeking jail time~~.  $JE$ (GDB)

11  2.  I have the right to a speedy and public ~~bench~~ trial in the place where the

12      crime is alleged to have been committed.

13  3.  I have the right to remain silent before and during trial, and I need not

14      testify against myself; also that any statement I make can be used as

15      evidence against me.

16  4.  I have the right at trial to question witnesses who testify against me.

17  5.  I have the right at trial to call witnesses to testify for me.

18  6.  I am presumed innocent unless the charge(s) against me are proved beyond

19      a reasonable doubt, or I enter a plea of guilty.

20  7.  I have the right to present evidence and a defense.

21  8.  I have the right to appeal a finding, after trial, of guilty, if I have pleaded not

22      guilty.

23  9.  That if I proceed to trial and am found guilty, I may seek suspension of

24      some or all of the fines and costs, and incarceration that may be ordered,

25      upon condition that I seek treatment, and, further, that I may seek treatment

26      from public and private agencies at any time without regard to whether or

27      not I am found guilty of the offense charged.

28

EVANS Unsupervised Deferred Prosecution Agreement - 2

10.    By deferring prosecution on these charges I understand I give up my right to (a) a speedy trial, (b) testify, (c) question witnesses, (d) call witnesses, (e) present evidence or a defense.

## ACCEPTANCE OF DEFERRED PROSECUTION AND STIPULATION OF FACTS

The above-named defendant, having been advised of and acknowledging his rights, does:

1.    Accept and agree to pursue and complete the terms and conditions of this unsupervised deferred prosecution;

2.    I understand that if I fail or neglect to comply with any part of the terms and conditions of the deferred prosecution, then the Court will hold a hearing to determine whether I should be removed from the deferred prosecution program. After the hearing the Court will either order that I continue with the conditions of my deferred prosecution or be removed from deferred prosecution and enter judgment. If I am convicted of a similar offense during the deferred prosecution, the Court will revoke the deferred prosecution and enter judgment;

3.    I further agree that if the Court revokes the order granting this Deferred Prosecution, I hereby stipulate and agree to the admissibility of the facts contained in the written police report(s), and any attachment thereto, and their admissibility in evidence to be used to support a finding of guilt. I understand that by this process, I am giving up the Constitutional right to a trial, the right to hear and question witnesses, the right to call witnesses in my own behalf, and the right to testify or not to testify, the right to present evidence or a defense, and the right to remain silent;

4.    I understand that I am entitled to a trial that would determine my guilt or innocence. I understand before signing this Acceptance of Deferred

EVANS Unsupervised Deferred Prosecution Agreement - 3

1    Prosecution and Stipulation of Facts and waiver that I have the right to be

2    represented by an attorney ~~when the~~ Government is ~~seeking jail time, or if I~~

3    ~~am a minor. I do hereby voluntarily and with knowledge of the above rights~~

4    ~~waive my right to a trial of~~ this case by the Court.    J E    (EDB)

5    **CONDITIONS OF UNSUPERVISED DEFERRED PROSECUTION**

6        The Defendant must abide by the following six conditions and requirements

7    within six months of the effective date of this agreement:

8    1.    The Defendant, JEREMY C. EVANS, is required to complete a
           substance abuse evaluation with an organization that has been
9          approved by the United States Probation Office.

10   2.    Cost of the evaluation and subsequent treatment shall be born by the
           Defendant.
11
12   3.    The Defendant will submit a copy of the evaluation to the United
           States Probation office.

13   4.    The Defendant will follow and complete the recommendations
           contained in the evaluation.
14
15   5.    The Defendant will show proof of completion of the
           recommendations of the evaluation to the United States Probation
           office within six months from the effective date of the agreement.
16
17   6.    The Defendant shall not violate any state, local, or federal criminal
           law for six months. The Defendant shall immediately contact his
18         pre-trial diversion supervisor if arrested and/or questioned by any law
           enforcement officer even for a minor traffic offense.

19
20       If the Defendant complies with all the rules, regulations, and conditions

21   mentioned above within the six month time period, no prosecution for the offense

22   charged by the Information dated April 1, 2008, will be instituted in this District,

23   and any violation notice or information will be dismissed. However, should there

24   be a violation of the terms of this agreement and the Deferment is revoked, a

25   conviction for the underlying offense will be imposed. If a conviction occurs,

26   Defendant understands that he will be subject to a re-sentencing which can include

27   up to the maximum punishment allowed by law.

28

EVANS Unsupervised Deferred Prosecution Agreement - 4

1

**ACKNOWLEDGMENT**

2    I, JEREMY C. EVANS, hereby state that I have read this document in its

3  entirety and consulted with my attorney. I understand the conditions of my

4  deferred prosecution and agree that I will comply with those conditions.

5

6  JEREMY C. EVANS                              6/30/08
7  Defendant                                    Date

8                                               7. 2. 08
9  Kailey Moran                                 Date
   Counsel for Defendant

10

11

12
   James A. McDevitt
13 United States Attorney

14

15 Stephanie Van Marter                         7-2-08
16 Assistant United States Attorney             Date

17

18 Gabriel Boenecke                             Date 7/2/08
19 Petty Offense Legal Intern

20

21

22

23

24

25

26

27

28

EVANS Unsupervised Deferred Prosecution Agreement - 5

# ATTACHMENT A

04/01/08 TUE 09:56   FAX  VA MC AUDIOLOGY                                      ☑002/025

DEPARTMENT OF VETERANS AFFAIRS                    Page   1
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

VA Facility                                      Date/Time Printed
VAMC SPOKANE WASHINGTON                           FEB 24, 2008@19:02
Automated VA Form 10-1393

DATE/TIME RECEIVED: FEB 16, 2008@11:39
DATE/TIME OF OFFENSE: DEC 17, 2007@01:35
ENDING DATE/TIME OF OFFENSE: FEB 23, 2008@14:00
LOCATION: PARKING LOT "D"
WEAPON USED: NONE
INVESTIGATING OFFICER: MCKINLEY,IAN J
METHOD OF OPERATION:
    FOLLOW UP OF UOR#0712200840 AND 0712170151. THEFT FROM A POV ON VA
    PROPERTY/STOP AND QUESTION OF ▓▓▓▓▓▓▓▓▓▓▓. NEW INFORMATION AND SWORN
    STATEMENT FROM ▓▓▓▓▓▓▓▓▓▓▓. REGARDING THEFT FROM A POV. OBTAINED
    CONFESSION FROM EVANS ON 23FEB2008.

CLASSIFICATION CODE: THEFTS/PERSONAL PROPERTY/BELOW $1000 (PERSONAL)
CLASSIFICATION CODE: STOPS & ARRESTS/STOPS FOR QUESTIONING/ALL OTHER STOPS

* * * * * * * * * * * * * * COMPLAINANT  DATA * * * * * * * * * * * * * * *

COMPLAINANT NAME: WICHMAN,THOMAS P
STATUS: EMPLOYEE
HOME ADDRESS: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

HOME PHONE: ▓▓▓▓▓▓▓▓
WORK ADDRESS:
WORK PHONE:

* * * * * * * * * * * * * * VICTIM DATA * * * * * * * * * * * * * * * * * *

VICTIM NAME: WICHMAN,THOMAS P
SEX: MALE           RACE:
STATUS: EMPLOYEE
DRIVER'S LICENSE & STATE:
HOME ADDRESS: ▓▓▓▓▓▓▓▓▓▓▓▓▓

HOME PHONE: ▓▓▓▓▓▓
WORK ADDRESS:
WORK PHONE:
MEDICAL TREATMENT:

DEPARTMENT OF VETERANS AFFAIRS      Page   2
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

VA Facility                           Date/Time Printed
VAMC SPOKANE WASHINGTON            FEB 24, 2008@19:02
Automated VA Form 10-1393

\* \* \* \* \* \* \* \* \* \* \* \* \* \* VICTIM DATA \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

VICTIM NAME: FLETT, ARTHUR W
SEX: MALE         RACE: AMERICAN INDIAN OR ALASKA NATIVE
STATUS: PATIENT
DRIVER'S LICENSE & STATE:
HOME ADDRESS: ████████████████████████

HOME PHONE: ███████████
WORK ADDRESS:
WORK PHONE:
MEDICAL TREATMENT:
      PATIENT WAS DECEASED PRIOR TO THIS INCIDENT, VAN LEFT ON
      PROPERTY FOR DISPOSITION WITH FAMILY WHEN THEFT OCCURRED.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* OFFENDER DATA \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

OFFENDER NAME: EVANS, JEREMY
SSN: ██████████     DOB: ██████████        AGE: 19
SEX: MALE           RACE: WHITE            HEIGHT: 5-11
WEIGHT: 130         HAIR COLOR: BLOND     EYE COLOR: BLUE
SKIN TONE:          SCARS/MARKS:
STATUS: OUTSIDER
DRIVER'S LICENSE & STATE: ████████████████████
PERSONAL DESCRIPTION:

HOME ADDRESS: ██████████████████████████

HOME PHONE: ████████████████
WORK ADDRESS:
WORK PHONE:
OFFENSE COMMITTED: THEFT-PERSONAL PROPERTY 18 USC 661
DISPOSITION: CHARGED   CHARGING DOCUMENT: 0096431
OFFENSE COMMITTED: ASSIMILATIVE CRIMES STATUTE 18 USC 13
DISPOSITION: CHARGES PENDING   CHARGING DOCUMENT:

\* \* \* \* \* \* \* \* \* \* \* \* \* WITNESS DATA \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

WITNESS NAME: ████████████████
HOME ADDRESS: ████████████████

HOME PHONE:
WORK ADDRESS:
WORK PHONE:

DEPARTMENT OF VETERANS AFFAIRS                      Page   3
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

VA Facility                                    Date/Time Printed
VAMC SPOKANE WASHINGTON                         FEB 24, 2008@19:02
Automated VA Form 10-1393


* * * * * * * * * * * * * VEHICLE INFORMATION * * * * * * * * * * * * * * *

LICENSE TAG # & STATE: ▃▃▃▃▃▃
MAKE: SUBARU                        MODEL: JUSTY
STYLE: 4DR
COLOR: SILVER
DECAL # & COLOR: ▃▃▃▃▃▃
YEAR OF MANUFACTURE: 1992
OWNER NAME: WICHMAN,THOMAS P

* * * * * * * * * * * * * * LOST/STOLEN  PROPERTY * * * * * * * * * * * * *

ITEM NAME: HEATER
DESCRIPTION: 120V HOLMES CERAMIC HEATER
DOLLAR LOSS: 20
DOLLAR RECOVERED: 20

* * * * * * * * * * * * * * LOST/STOLEN  PROPERTY * * * * * * * * * * * * *

ITEM NAME: STEREO
DESCRIPTION: UNKNOWN BRAND AND TYPE OF CAR STEREO
DOLLAR LOSS:
DOLLAR RECOVERED:

* * * * * * * * * * * * * * PROPERTY HELD * * * * * * * * * * * * * * * * *

ITEM #: 1
QUANTITY: 1
PURPOSE: EVIDENCE
DESCRIPTION:
        HOLMES CERAMIC HEATER/120V/WHITE/NO SERIAL NUMBER (EVIDENCE
        LOG # 010-08) TURNED OVER TO PRIMARY EVIDENCE CUSTODIAN.


WAS CIP WEAPON USED? NO
WAS POLICE BATON USED? NO

OTHER AGENCY NOTIFIED


USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 9

DEPARTMENT OF VETERANS AFFAIRS                    Page    1
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

VA Facility                                          Date/Time Printed
VAMC SPOKANE WASHINGTON                              FEB 24, 2008@19:02
Automated VA Form 10-1393


U.S. ATTORNEY NOTIFIED


* * * * * * * * * * * * * * * * NARRATIVE * * * * * * * * * * * * * * * * *

       ORIGIN:

I OBSERVED ▮▮▮▮▮▮▮▮▮▮▮▮ ON V.A. PROPERTY ON INDEPENDENCE, WALKING
TOWARD ASSEMBLY. I HAD A RECOLLECTION OF A STOP AND QUESTION THAT I HAD
PERFORMED ON ▮▮▮▮ ON 17DEC2007. (UOR# 0712170151 ATTACHMENT 1) A PERSONAL
PROPERTY THEFT WAS REPORTED TO OFFICER SPALL ON 20DEC2007, AND HAD OCCURRED
ON 17DEC2007. (UOR# 0712200840 ATTACHMENT 2). I STOPPED ▮▮▮▮▮ FOR
QUESTIONING REGARDING THIS INCIDENT.


       INITIAL OBSERVATION:

I OBSERVED ▮▮▮▮▮ WALKING IN AN EAST BOUND DIRECTION TOWARD ASSEMBLY STREET
ON INDEPENDENCE DRIVE CARRYING A SKATEBOARD.


       INVESTIGATION:

ON 16FEB2008 AT APPROXIMATELY 1139 I OBSERVED ▮▮▮▮▮ WALKING TOWARD ASSEMBLY
STREET ON INDEPENDENCE DRIVE. I GOT INTO THE STATION POLICE VEHICLE AND
DROVE TO HIS LOCATION. I SIGNALED FOR ▮▮▮▮ TO STOP BY SOUNDING THE POLICE
VEHICLE HORN AND ENGAGING THE OVERHEAD EMERGENCY LIGHTING SYSTEM. ▮▮▮▮
STOPPED ON INDEPENDENCE, AND TURNED TOWARD ME. I GOT OUT OF THE PATROL CAR
AND NOTIFIED OFFICER RAMOS THAT I WOULD BE CONDUCTING A STOP AND QUESTION
ON AN INDIVIDUAL AND GAVE HIM MY LOCATION AND ▮▮▮▮▮ DESCRIPTION. I
STOPPED ▮▮▮▮▮ AND SAID, "WHAT IS YOUR LAST NAME?" HE RESPONDED, ▮▮▮▮▮ " I
ASKED ▮▮▮▮ WHAT HE WAS DOING ON THE PROPERTY TODAY, AND HE RESPONDED,
"I AM WAITING FOR THE BUS, BUT I THINK I MISSED IT." I ASKED ▮▮▮▮ TO STEP
OVER AND TALK TO ME AND ▮▮▮▮▮ REPLIED, "I DIDN'T EVEN DO NOTHING WRONG." I
SAID, "JUST COME OVER HERE AND TALK WITH ME FOR A MINUTE." I ASKED ▮▮▮▮▮,
"DO YOU REMEMBER WHEN I STOPPED YOU HERE A COUPLE OF MONTHS AGO?" ▮▮▮▮▮
SAID, "YEAH, RIGHT OVER THERE" (POINTING TOWARD BLDG 7.) I SAID, "WELL, WE
HAD A PERSONAL PROPERTY THEFT THAT NIGHT." ▮▮▮▮▮ SAID, "YEAH, I REMEMBER
YOU SAYING THAT IT WAS SOMEONE WHO WAS ABOUT TO DIE IN THE HOSPITAL." I
SAID, "WELL, ACTUALLY HE DID PASS AWAY. BUT ONE OF THE PEOPLE WHO WAS
TRYING TO KEEP HIM ALIVE WAS ALSO A VICTIM." ▮▮▮▮▮ SAID, "OH MAN, THAT
SUCKS." I SAID TO ▮▮▮▮▮ "IT WOULD REALLY BEHOOVE YOU TO COOPERATE WITH
ME." HE SAID, "YEAH." I ASKED ▮▮▮▮▮, "DO YOU KNOW WHO STOLE THE STUFF FROM
THE CAR?" HE SAID, "YEAH, I DO." I ASKED HIM FOR A NAME AND HE SAID,
"JEREMY EVANS, HE LIVES RIGHT OVER THERE." I ASKED, "HOW DO YOU KNOW IT WAS
HIM?" ▮▮▮▮▮ SAID, "CAUSE THAT'S WHO I WAS LOOKING FOR WHEN I WAS HERE." I
SAID, "THE NIGHT I STOPPED YOU?" HE REPLIED, "YEAH, I FOLLOWED THE
FOOTPRINTS IN THE SNOW FROM HIS HOUSE." I ASKED SOME GENERAL QUESTIONS

DEPARTMENT OF VETERANS AFFAIRS                    Page    5
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

VA Facility                                                       Date/Time Printed
VAMC SPOKANE WASHINGTON                                           FEB 24, 2008@19:02
Automated VA Form 10-1393

ABOUT EVANS, AND ASKED ⬛⬛⬛, "HAVE YOU EVER SEEN JEREMY STEAL THINGS IN
YOUR PRESENCE?" ⬛⬛⬛ NODDED HIS HEAD UP AND DOWN, SIGNALING YES. I ASKED
WHAT TYPE OF THINGS, AND ⬛⬛⬛ SAID, "CHRISTMAS LIGHTS, UMMMM, THAT'S ABOUT
IT." I SAID, "SO WHAT MAKES YOU THINK THAT JEREMY STOLE THIS STUFF?" HE
SAID, "BECAUSE I SAW THAT JEREMY HAD A LITTLE ASS HEATER IN HIS ROOM THE
NEXT TIME I WENT OVER THERE, AND HE SAID 'THIS IS A BAD ASS LITTLE HEATER I
GOT FROM THAT CAR HUH?' I WAS LIKE, YEAH. THAT'S WHEN I KNEW HE HAD STOLEN
STUFF. CAUSE, I KNEW HE WAS OUT LOOKING AT CARS IN THE PARKING LOT, AND
HE'S DONE THAT BEFORE." I ASKED ⬛⬛⬛ IF HE WOULD BE WILLING TO MAKE A
STATEMENT TO THAT EFFECT, AND HE SAID, "YEAH, IT WILL GIVE ME SOMETHING TO
DO BEFORE I CATCH THE NEXT BUS ANYWAY." I INFORMED ⬛⬛⬛ THAT HE WAS UNDER
NO OBLIGATION TO MAKE A STATEMENT, AND DID NOT HAVE TO ANSWER ANY OF MY
QUESTIONS, BUT THAT HE WOULD HELP TO BRING JUSTICE TO ANY POTENTIAL
VICTIMS. ⬛⬛⬛ SAID, "YEAH, OKAY, NAH I'LL WRITE IT." ⬛⬛⬛ WROTE HIS
STATEMENT (ATTACHMENT 3) AT APPROXIMATELY 1216, SIGNED AND DATED, WITNESSED
BY ME IN THE REAR SEAT OF THE VA POLICE PATROL CAR. I INFORMED OFFICER
RAMOS OF MY STATUS, AND CONTINUED TO RECORD STATEMENTS FROM ⬛⬛⬛. ⬛⬛⬛
SAID THE FOLLOWING STATEMENTS BETWEEN 1145 AND 1216: "THAT MAKES ME MAD
THAT HE STOLE FROM A DEAD GUY.", "DIDN'T YOU SAY THERE WAS A RADIO MISSING
TOO, CAUSE I THINK HE HAD A NEWER LOOKING CAR RADIO TOO.", AND "HE AND I
GOT IN TO A FIGHT LIKE A WEEK AFTER THAT, SO I DON'T GIVE A DAMN IF HE GETS
BUSTED.", "HE'S IN SOME SHIT RIGHT NOW, BECAUSE HE WAS TRESSPASSING ON
SHADLE, BEAT UP SOME KIDS DAD WHILE HE WAS DRINK, AND OTHER STUFF. I'M NOT
INTO THAT SHIT", "CAN I REMAIN ANONYMOUS ON THIS?" I TOLD ⬛⬛⬛ THAT I
WOULD DO MY BEST TO KEEP HIS IDENTITY A SECRET DURING THE INVESTIGATION. I
COULD NOT VERIFY ANY OUTSTANDING WANTS OR WARRANTS FOR EVANS, BUT OBTAINED
HIS ADDRESS FROM SPOKANE POLICE RADIO, VIA TELEPHONE.


            DISPOSITION:

    ⬛⬛⬛ WAS RELEASED AND THANKED FOR HIS COOPERATION. HE GOT ON THE #22 BUS
AND LEFT V.A. PROPERTY AT APPROXIMATELY 1217. INFORMATION HAS BEEN
FORWARDED TO CAPTAIN MCARTHUR FOR REVIEW AND FOLLOW UP. EVANS WAS LOCATED,
QUESTIONED BY OFFICER MCKINLEY AND CONFESSED TO TWO THEFTS OF PERSONAL
PROPERTY ON THE VA GROUNDS. (SEE FOLLOW ON NOTES AND FON ATTACHMENTS)

ATTACHMENTS: 1. UOR#0712200840
             2. UOR#0712170151
             3. VOLUNTARY STATEMENT OF ⬛⬛⬛⬛⬛⬛

        FOLLOW ON NOTES:
                      FON1. VA FORM 1430 FROM 22 FEBRUARY 08
                      FON2. VA FORM 1430 FROM 23 FEBRUARY 08
                            WITNESSED BY OFC W.G. KELLEY
                      FON3. VA FORM 0023 WRITTEN CONFESSION OF EVANS

EVANS CONFESSED TO STEALING A RADIO AND A HEATER FROM TWO SEPARATE VEHICLES
IN THE VA MEDICAL CENTER PARKING LOT. EVANS STATED THAT HE WAS UNABLE TO
LOCATE THE RADIO, BUT WAS STILL IN POSESSION OF THE HEATER. THE HEATER WAS

Case 2:08-cr-00040-CI   Document 25   Filed 07/02/08

DEPARTMENT OF VETERANS AFFAIRS                   Page    6
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

VA Facility                                      Date/Time Printed
VAMC SPOKANE WASHINGTON                           FEB 24, 2008@19:02
Automated VA Form 10-1393

BROUGHT TO THE VA POLICE OFFICE BY EVANS AND LOGGED INTO EVIDENCE. BECAUSE
OF THE WRITTEN CONFESSION, AND THE CONSISTENCY OF PREVIOUS REPORTS WITH THE
RECOVERED HEATER, AND THE ADMITTED THEFT OF THE CAR STEREO, EVANS WAS
ARRESTED AND CHARGED WITH 18 USC 661 THEFT OF PERSONAL PROPERTY. EVANS WAS
RELEASED FROM CUSTODY AT APPROXIMATELY 1420. PENDING A COURT DATE FOR
DISPOSITION.

IAN J MCKINLEY    # 3462
INVESTIGATING OFFICER

Case 2:08-cr-00040-CI   Document 35   Filed 07/02/08

DEPARTMENT OF VETERANS AFFAIRS                    Page   7
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

VA Facility                                      Date/Time Printed
VAMC SPOKANE WASHINGTON                           FEB 24, 2008@19:02
Automated VA Form 10-1393

FOLLOW-UP NOTES:

ON 22 FEBRUARY 2008 AT APPROXIMATELY 2230 I, OFFICER MCKINLEY, WAS ON
VEHICLE PATROL IN MEMORIAL CIRCLE WHEN I OBSERVED AN INDIVIDUAL WALKING ON
ASSEMBLY AVENUE, ON THE WEST SIDEWALK (VA SIDE). THE INDIVIDUAL APPEARED TO
LAY DOWN IN THE GRASS AS HE MOVED CLOSER TO WELLESLEY AVE, NEAR THE SIGNAGE
ON THE CORNER OF ASSEMBLY AND WELLESLEY. I DROVE THE PATROL VEHICLE ON TO
ASSEMBLY AVENUE FROM MEMORIAL CIRCLE, AND DROVE SOUTHBOUND ON ASSEMBLY TO
WELLESLEY. AS I APPROACHED THE INDIVIDUAL, HE STOOD UP, LOOKED IN MY
DIRECTION AND QUICKLY LOOKED AWAY. I NOTIFIED OFFICER SPALL OF MY LOCATION,
AND THE SUSPICIOUS INDIVIDUAL BY RADIO, AND HE RESPONDED FROM THE SECOND
FLOOR OF BLDG 1. THE INDIVIDUAL THEN BEGAN THROWING SNOW ONTO THE SIDEWALK
WITH BOTH HANDS WHILE WALKING TOWARD WELLESLEY. I ACTIVATED MY EMERGENCY
OVERHEAD LIGHTING SYSTEM AND HONKED THE AIR HORN TWICE. THE INDIVIDUAL DID
NOT LOOK BACK AT ME, AND CONTINUED WALKING ACROSS WELLESLEY. I AGAIN HONKED
THE AIR HORN, AND THE INDIVIDUAL LOOKED BACK AT ME FROM THE SOUTHWEST
CORNER OF WELLESLEY AND ASSEMBLY. I SAID TO THE INDIVIDUAL, "HEY, CAN YOU
COME HERE FOR A MINUTE?" THE INDIVIDUAL WALKED BACK ACROSS WELLESLEY AND I
ASKED HIM HIS NAME. HE REPLIED, "JEREMY." I SAID, "JEREMY WHAT?" HIS
RESPONSE WAS, "JEREMY EVANS." I ASKED THE INDIVIDUAL IF HE WANTED TO GET
OUT OF THE ROAD, AND COME ONTO THE SIDEWALK. HE SAID, "YES, PLEASE." I
DIRECTED EVANS TO THE SIDEWALK. AT THIS TIME MY PATROL VEHICLE WAS PARKED
ON THE NORTHWEST CORNER OF ASSEMBLY ON WELLESLEY. AS EVANS GOT CLOSER TO ME
I COULD SMELL A STRONG ODOR OF ALCOHOL EMITTING FROM HIS PERSON. I ASKED
EVANS IF HE HAD BEEN DRINKING, AND HE SAID, "NOPE." I ASKED EVANS IF HE
KNEW WHY I WANTED TO TALK TO HIM AND HE REPLIED, "NOPE." EVANS THEN BEGAN
TO CLOSE DISTANCE BETWEEN US, AND I DIRECTED HIM, "MOVE BACK." EVANS
COMPLIED. OFFICER SPALL ARRIVED ON SCENE AT APPROXIMATELY 2235. WHEN
OFFICER SPALL WAS IN POSITION I TOLD EVANS TO TURN AROUND AND ASKED HIM IF
HE HAD ANY WEAPONS ON HIM, HE REPLIED, "NOPE." I CONDUCTED A WEAPONS FRISK
WITH NEGATIVE RESULTS. I ASKED EVANS IF HE WOULD BE WILLING TO TAKE A RIDE
WITH ME SO THAT WE COULD TALK ABOUT A NIGHT IN DECEMBER. EVANS SAID THAT HE
DID NOT REMEMBER ANY NIGHT IN DECEMBER. I ASKED HIM IF HE KNEW THAT THE
V.A. HAD CAMERAS THAT WERE CAPABLE OF RECORDING IMAGES, EVEN FROM 3 MONTHS
AGO, AND EVANS GAVE A BLANK STARE WITH NO VERBAL RESPONSE. I TOLD EVANS
THAT I COULD GO OFF OF WHAT THE VIDEO SHOWED ME, OR HE COULD TALK WITH ME
AND GIVE ME HIS SIDE OF THE STORY. EVANS NODDED HIS HEAD IN AN AFFIRMATIVE
DIRECTION. I ASKED EVANS IF HE WANTED TO TALK, AND HE REPLIED, "YEAH, LET'S
TALK." I TOLD EVANS THAT I WAS GOING TO ADMINISTER A BREATHALYZER TEST TO
SEE HOW INTOXICATED HE WAS, AND HE SAID, "HMM, OKAY. YOU PROBABLY ARE
SMELLIN' SOMETHING, CAUSE YEAH, I'VE HAD SOME STUFF TO DRINK." AT THIS
POINT I TOLD EVANS TO PLACE HIS HANDS BEHIND HIS BACK, AND HE COMPLIED. I
REMOVED MY HANDCUFFS FROM THEIR CASE, AND APPLIED THE FIRST AND SECOND
CUFFS WHICH I DOUBLE LOCKED AND CHECKED FOR TIGHTNESS. OFFICER SPALL OPENED
THE PASSENGER SIDE REAR DOOR OF THE PATROL VEHICLE, AND I CONDUCTED A
VISUAL SEARCH. NO CONTRABAND WAS IN THE PATROL VEHICLE. I SEATED EVANS IN
THE BACK SEAT OF THE PATROL VEHICLE, AND CLOSED THE DOOR. I EXPLAINED WHAT
I HAD SEEN TO OFFICER SPALL, AND ASKED OFFICER SPALL TO RETRIEVE A
BREATHALYZER TEST KIT FROM BLDG 7. I THEN DROVE BACK TO BLDG 1 VIA ASSEMBLY

04/01/08 TUE 08:58 FAX VA MC AUDIOLOGY @009/025

USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 14

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UORH 08-02-16-1139

Date/Time Printed
FEB 24, 2008&19:02

Page 8

VA Facility
VAMC SPOKANE WASHINGTON
Automated VA Form 10 1393

ONTO MEMORIAL CIRCLE WITH OFFICER SPALL IN THE PASSENGER SEAT, AND EVANS IN THE REAR PASSENGER SEAT. I PARKED THE VEHICLE IN FRONT OF THE MAIN ENTRANCE TO BLDG 7, AND OPENED THE DOOR FOR EVANS. I MAINTAINED POSITIVE CONTROL OF EVANS BY GRABBING HIS SHIRT, BECAUSE HE WAS UNSTABLE ON HIS FEET. I REMOVED THE RESTRAINTS FROM EVANS BECAUSE I WAS WORRIED ABOUT HIS SAFETY DUE TO HIS INSTABILITY. I ESCORTED EVANS TO THE EMERGENCY DEPARTMENT AMBULANCE ENTRANCE, AND AOD MARK FRIESKE OPENED THE AMBULANCE ENTRANCE DOORS. I SEARCHED EVANS AGAIN, THOROUGHLY FOR CONTRABAND WITH NEGATIVE RESULTS. I PLACED EVANS INTO THE E.D. SECLUSION ROOM, AND WAITED FOR OFFICER SPALL TO ARRIVE WITH THE BREATHALYZER FROM BLDG 7. I OBSERVED EVANS PUNCHING HIMSELF IN THE FACE, AND I TOLD HIM TO STOP OR HE WOULD BE PLACED IN HANDCUFFS. EVANS COMPLIED. OFFICER SPALL ARRIVED WITH THE BREATHALYZER AT APPROXIMATELY 1055. I ASKED EVANS IF HE KNEW WHAT THE DEVICE WAS AND HE WANTED TO TAKE THE TEST. HE REPLIED, "SURE, WHY NOT." I INSTRUCTED EVANS TO TAKE A DEEP BREATH, AND TO BLOW INTO THE TUBE UNTIL I TOLD HIM TO STOP. EVANS COMPLIED, AND A GOOD BREATH SAMPLE WAS TAKEN. THE DISPLAY READ. "0.187" INDICATING EVANS LEVEL OF INTOXICATION. I READ EVANS HIS CONSTITUTIONAL RIGHTS DIRECTLY FROM VA FORM 1430 (ATTACHMENT FON) WHICH HE STATED THAT HE UNDERSTOOD, BUT DECLINED TO ANSWER QUESTIONS. I IMMEDIATELY CEASED DIALOGUE WITH EVANS REGARDING THE INCIDENT, AND ASKED HIM FOR HIS PHONE NUMBER. EVANS GAVE ME HIS PHONE NUMBER, AND I CONTACTED SHAWN _____. AT THE NUMBER, WHO WAS OVER THE AGE OF 18, AND AGREED TO HAVE EVANS RELEASED TO HIM AS THE RESPONSIBLE PARTY DUE TO EVANS LEVEL OF INTOXICATION. I AGAIN OBSERVED EVANS PUNCH HIMSELF IN THE FACE FROM THE WINDOW IN THE SECLUSION ROOM DOOR. I OPENED THE DOOR AND INFORMED EVANS THAT HIS COUSIN WOULD BE ON HIS WAY TO PICK HIM UP. I ASKED EVANS AGAIN TO STOP HITTING HIMSELF, AND HE SAID, "OKAY, I WONT." AT APPROXIMATELY 2310, EVANS COUSIN ARRIVED AND WAS BRIEFED ON EVANS LEVEL OF INTOXICATION. I RETURNED TO THE SECLUSION ROOM AND ASKED EVANS IF HE WOULD BE WILLING TO TALK TO ME ANOTHER DAY AND EVANS REPLIED, "YEAH, I'LL COME BACK AND TALK TO YOU. ANY TIME BUT NOW, MY HEAD IS JUST NOT OKAY RIGHT NOW." I ASKED EVANS, "SO YOU WILL COME BACK AND TALK TO ME TOMORROW?" EVANS SAID, "YEAH, YOU NAME THE TIME, AND I'LL BE HERE." I GAVE EVANS A BUSINESS CARD AND WROTE ON THE BACK "1:00PM 23FEBRUARY" EVANS SAID THAT HE WOULD BE AT THE OFFICE AT 1:00PM. I ALSO INFORMED THE COUSIN OF THE AGREEMENT, AND HE STATED THAT HE WOULD INSURE THAT EVANS MADE THE APPOINTMENT. EVANS WAS RELEASED FROM CUSTODY AT APPROXIMATELY 2315 TO HIS COUSIN. 23FEBRUARY2008: AT APPROXIMATELY 1255PM ON 23 FEBRUARY 2008 EVANS ARRIVED AT THE POLICE OFFICE (ROOM D105) FOR HIS SCHEDULED INTERVIEW. I TOOK MR. EVANS TO THE POLICE TRAINING OFFICE (ROOM B252) FOR QUESTIONING. I ADVISED EVANS OF HIS CONSTITUTIONAL RIGHTS BY READING DIRECTLY OFF OF VA FORM 1430, MR. EVANS UNDERSTOOD HIS RIGHTS, WAIVED THEM, AND AGREED TO ANSWER MY QUESTIONS. (ATTACHMENT FON 2) EVANS WAS SEATED IN THE NORTHEAST CORNER OF THE POLICE TRAINING ROOM, AND I SAT JUST TO THE WEST OF HIM. I ASKED THE FOLLOWING QUESTIONS, AND RECEIVED THE FOLLOWING RESPONSES. THE INTERVIEW LASTED APPROXIMATELY 1 HOUR AND 5 MINUTES. I ASKED; "ARE YOU JEREMY EVANS OF 4211 W. OLYMPIC?" RESPONSE: "YES." "DO YOU KNOW WHY YOU ARE BEING QUESTIONED TODAY?" RESPONSE: "NO" "WHAT WERE YOU DOING ON THE NIGHT OF DECEMBER 17TH?" RESPONSE: "I DON'T KNOW." "WERE YOU ON THE PROPERTY AT ANY TIME IN

04/10/08 TUE 09:58  FAX  VA MC AUDIOLOGY                                      ☒010/025

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

Page 9

VA Facility
VAMC SPOKANE WASHINGTON
Automated VA Form 10-1393

Date/Time Printed
FEB 24, 2008@19:02

DECEMBER?" RESPONSE: "I DON'T THINK SO." "YOU DON'T THINK SO?" RESPONSE: "NO." EVANS BECAME VERY ELUSIVE, AND SHOWED BODY MOVEMENT THAT SUGGESTED HE WAS UNCOMFORTABLE SUCH AS: NOT MAINTAINING EYE CONTACT, BITING HIS LIP, PLUCKING AT HIS SLEEVES, AND SHIFTING IN HIS CHAIR. I SAID, "WELL JEREMY, I HAVE A WHOLE TON OF EVIDENCE THAT TELLS ME YOU WERE HERE. I ALREADY TOLD YOU THAT WE HAD A THEFT ON THE PROPERTY. YOU HAVE TO GIVE ME A CLUE AS TO WHY I SHOULD BELIEVE YOU." RESPONSE: "I DON'T KNOW." I ASKED EVANS MANY QUESTIONS REGARDING HIS PERSONALITY AND MORALE TURPITUDE INCLUDING, "WHAT IS THE WORST THING YOU HAVE EVER DONE?" RESPONSE: "DRANK ALCOHOL." I RESPONDED WITH, "YOU NEED A PUBLIC DEFENDER FOR DRINKING ALCOHOL?" (IT SHOULD BE NOTED THAT WHEN EVANS RETRIEVED HIS I.D. CARD FROM HIS WALLET, I NOTICED A PUBLIC DEFENDER BUSINESS CARD IN HIS WALLET THAT WAS DISPLAYED FROM A CLEAR PLASTIC WINDOW.) EVANS RESPONDED: "WELL, MY MOM WAS TOLD ME TO GET ONE." THROUGHOUT THE NEXT 30 MINUTES THE ONLY RESPONSE I WAS ABLE TO GET THROUGH QUESTIONING WERE: "NO.", "I DON'T KNOW.", AND "I DON'T REMEMBER." I INFORMED EVANS OF THE PUNISHMENT FOR THE CRIMES THAT HAD BEEN COMITTED ON VA PROPERTY AND ALSO INFORMED HIM THAT I HAD A SWORN WITNESS STATEMENT FROM SOMEONE WHO KNEW HIM PLACING HIM AT THE SCENE OF THE CRIME, AND IN POSSESSION OF THE STOLEN PROPERTY. I SAID EVANS, "WHAT HAPPENED THAT NIGHT. I NEED YOUR SIDE OF THE STORY SO THAT I DON'T HAVE TO SEND YOU TO COURT WITH ONLY HALF OF THE ACCOUNT. COME ON JEREMY, GIVE ME THE TRUTH." EVANS RESPONDED: "OKAY, WE WERE DRINKING AND DECIDED TO GO ON A WALK AND GOT SPLIT APART." I ASKED, "WHY WERE YOU ON A WALK?" RESPONSE: "WE GOT BORED." I ASKED, "OKAY, WHAT ELSE HAPPENED? YOU ARE STARTING TO REMEMBER THINGS, AND THAT IS GOOD JEREMY, REALLY GOOD." RESPONSE: "I DON'T REMEMBER MOST OF THE NIGHT, BECAUSE I WAS DRUNK." I SAID, "JEREMY, YOU HAVE GOT TO UNDERSTAND THAT I COULD BASE MY PROBABLE CAUSE FOR YOUR ARREST WITH WHAT I HAVE GOT, BUT WITHOUT YOUR STATEMENT, I WON'T BE ABLE TO TELL THEM WHAT REALLY HAPPENED. YOU HAVE TO MAKE THE RIGHT DECISION HERE, AND GET THIS POSSIBILITY THAT I COULD HAVE STOLEN IT." I SAID, "JEREMY, YOU JUST SAID THERE IS A POSSIBILITY THAT YOU STOLE THE PROPERTY. IF YOU WERE AN INNOCENT MAN, YOU WOULD HAVE NEVER SAID THAT. YOU STOLE IT, NOW TELL ME HOW." RESPONSE: "I...I REMEMBER WALKING AND WAS COLD SO I GOT IN THIS CAR AND..." RESPONSE: "I...I" I SAID, "WHAT ELSE JEREMY, KEEP GOING. WE ARE GETTING SOMEWHERE." RESPONSE: "I GOT IN AND STOLE THE STEREO." I ASKED, "HOW?" RESPONSE: "I JUST PULLED IT OUT." THERE WAS A LONG SILENCE, AND I ASKED JEREMY, "LOOK, I HAVE EVERYTHING I NEED, I JUST NEED YOU TO FILL IN THESE BLANKS." RESPONSE: "I HAVE BLACKOUT PROBLEMS, MY MOM'S BEEN TELLING ME NOT TO DRINK SINCE LIKE 8TH GRADE. I THINK I AM ALLERGIC TO ALCOHOL." I ASKED EVANS, "WHAT ELSE DID YOU STEAL?" RESPONSE: "A HEATER." I SAID, "BUT NOT FROM THE SAME CAR?" RESPONSE: "NO." I ASKED EVANS IF HE REMEMBERED THE TYPES OF CARS THAT HE STOLE THE ITEMS FROM, AND HE SAID "NO, I GET TUNNEL VISION WHEN I'M DRUNK." AT THIS POINT I TOLD EVANS THAT I WOULD LIKE HIM TO WRITE A CONFESSION IN WRITTEN FORM. EVANS AGREED. I ALSO ASKED EVANS IF HE STILL HAD POSSESSION OF THE PROPERTY AND HE SAID THAT HE DIDN'T KNOW WHAT HAD HAPPENED TO THE STEREO, BUT THAT HE STILL HAD THE HEATER. I TOLD EVANS, "I NEED YOU TO BRING ME THAT HEATER." EVANS AGREED TO BRING THE HEATER IN TO THE POLICE OFFICE. I OBTAINED A WRITTEN STATEMENT FROM EVANS AT APPROXIMATELY 1409. (ATTACHMENT ON 3) EVANS BROUGHT A HOLMES CERAMIC PORTABLE HEATER WITH TWO

04/01/08 TUE 09:59  FAX  VA MC AUDIOLOGY                                  ✉011/025

DEPARTMENT OF VETERANS AFFAIRS                    Page  10
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 08-02-16-1139

VA Facility                                       Date/Time Printed
VAMC SPOKANE WASHINGTON                            FEB 24, 2008@19:02
Automated VA Form 10-1393

CONTROL KNOBS INTO THE POLICE OFFICE WHICH HE STATED THAT HE BROUGHT FROM
HIS HOME. THERE IS NO SERIAL NUMBER VISIBLE. I CITED EVANS FOR 18USC661
"THEFT OF PERSONAL PROPERTY" USDCVN# 0096431. EVANS WAS RELEASED FROM
CUSTODY AT APPROXIMATELY 1420 AND GIVEN INSTRUCTIONS REGARDING THE CHARGES.
THE HEATER WAS LOGGED INTO EVIDENCE (#010-08) AND LOCKED INTO THE TEMPORARY
EVIDENCE LOCKER IN ROOM B253. THE CASE IS PENDING COURT.

IAN J MCKINLEY   # 3462
FOLLOW-UP INVESTIGATOR

USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 16

ATTACHMENT #1

DEPARTMENT OF VETERANS AFFAIRS          Page   1
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 07-12-20-0840

V.  ...cility                                  Date/Time Printed
VAMC SPOKANE WASHINGTON                        DEC 22, 2007@10:46
Automated VA Form 10-1393


DATE/TIME RECEIVED: DEC 20, 2007@08:40
DATE/TIME OF OFFENSE: DEC 17, 2007@04:00
ENDING DATE/TIME OF OFFENSE: DEC 20, 2007@08:40
LOCATION: LOT D
WEAPON USED: NONE
INVESTIGATING OFFICER: SPALL,HOWARD C
METHOD OF OPERATION:
  REPORT OF THEFT OF PERSONAL PROPERTY FROM POV.

CLASSIFICATION CODE: THEFTS/PERSONAL PROPERTY/BELOW $1000 (PERSONAL)

* * * * * * * * * * * * * COMPLAINANT  DATA * * * * * * * * * * * * * *

COMPLAINANT NAME: WICHMAN,THOMAS P
STATUS: EMPLOYEE
HOME ADDRESS: ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

HOME PHONE: ▄▄▄▄▄▄▄
WO▔▔ ADDRESS:
W    PHONE:

* * * * * * * * * * * * * * VICTIM DATA * * * * * * * * * * * * * * * *

VICTIM NAME: WICHMAN,THOMAS P
SEX: MALE          RACE:
STATUS: EMPLOYEE
DRIVER'S LICENSE & STATE:
HOME ADDRESS: ▄▄▄▄▄▄▄▄▄▄▄▄▄▄

HOME PHONE: ▄▄▄▄▄▄
WORK ADDRESS:
WORK PHONE:
MEDICAL TREATMENT:
        NONE

* * * * * * * * * * * * * LOST/STOLEN  PROPERTY * * * * * * * * * * * * *

ITEM NAME: HEATER
DESCRIPTION: SMALL 120V HEATER
DOLLAR LOSS: 20.00
DOLLAR RECOVERED:


W▔▔ CIP WEAPON USED? NO
▏   OLICE BATON USED? NO


USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 17

⌀013/025

DEPARTMENT OF VETERANS AFFAIRS          Page    2
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 07-12-20-0840

VA Facility                                    Date/Time Printed
VAMC SPOKANE WASHINGTON                         DEC 22, 2007@10:46
Automated VA Form 10-1393


OTHER AGENCY NOTIFIED


U.S. ATTORNEY NOTIFIED


* * * * * * * * * * * * * * * * * NARRATIVE * * * * * * * * * * * * * * * * * *

        ORIGIN:

DURING BUILDING CHECK ON 20 DEC 07 MR WICHMAN INFORMED ME THAT A SOMEONE ON
17 DEC 07 AT/ABOUT 0400 WENT INTO HIS CAR.


        INITIAL OBSERVATION:

   `NE


        INVESTIGATION:

THAT THIS PERSON RUMMAGED THROUGH HIS VEHICLE.  MR WICHMAN STATED THAT AS
NEAR AS HE CAN TELL THE HEATER IS THE ONLY THING MISSING.  MR WICHMAN IS
NOT ABLE TO LOCK HIE CAR DOORS.  SEE VA FORM 0024.


        DISPOSITION:

CLOSED, MR WICHMAN WAS INFORMED THAT HE NEEDED TO FIX THE DOOR LOCKS ON HIS
CAR, TO PREVENT ANY MORE PROPERTY BEEN TAKEN.


HOWARD C SPALL   # 3445
INVESTIGATING OFFICER


USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 18

04/01/08 TUE 09:59  FAX  VA MC AUDIOLOGY

DOC # 0717.2C (2)0840

☑014/025

**Department of Veterans Affairs**

## VOLUNTARY WITNESS STATEMENT

Location: _Parking lot "D"_                Date. _Occurred 12/17/07_   _Report date 12/22/07_

_Thomas P. Wichmann_ , residing at or employed at _VAMC + Rill, Spokane, Wit._
make the following statement freely and voluntarily:

When getting off work Monday morning 12/17/07 I discovered
that someone had entered my car during the night,
and rummaged around through my receipts and other
junk, and took a small 12v Heater that I
use to dry out my car periodically. As near as I
can tell, that was the only thing taken.
        -My car does not lock, so he did not have to
break anything to get in.
        I t was snowing that night, and stopped
at about 0400, and the tracks leading up to my
car had only a few flakes evident after the
person had made them. Therefore, I place
the time of the incident at around 0400.
        END OF STATEMENT

_TPW_
_Declarant Initials_

VA FORM
JAN 1993(4)  0024

USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 19

Case 2:08-cr-00040-CI   Document 25   Filed 07/02/08

**VOLUNTARY WITNESS STATEMENT**
**(Continuation Sheet)**

Department of Veterans Affairs

rement of _Thomas P. Wickman_

_AIT USED_

I have read/have had read to me the above statement consisting of ___2___ page(s), and certify that it is true and correct to the best of my knowledge.

No threats or promises have been made to me and no pressure or coercion of any kind has been used against me.

_Thomas P. Wickman_ _____       _12/20/07_
      (Declarant) Signature                                Date

_Greg L. V_____         _12. /20/07_
      (Witness) Signature                                  Date

VA FORM
JAN 1993(R)   **0024. EVANS - Unsupervised Deferred Prosecution Agreement - 20**        Page __2__ of __2__

04/01/08 TUE 10:00  FAX  VA MC AUDIOLOGY                                    ☒016/025

ATTACHMENT #2

DEPARTMENT OF VETERANS AFFAIRS                    Page   1
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 07-12-17-0151

    cility                                        Date/Time Printed
VAMC SPOKANE WASHINGTON                            DEC 17, 2007@04:00
Automated VA Form 10-1393


DATE/TIME RECEIVED: DEC 17, 2007@01:51
DATE/TIME OF OFFENSE: DEC 17, 2007@01:50
ENDING DATE/TIME OF OFFENSE: DEC 17, 2007@02:20
LOCATION: INDEPENDENCE NEAR BLDG 7
WEAPON USED:
INVESTIGATING OFFICER: MCKINLEY,IAN J
METHOD OF OPERATION:
    ██████████████ WAS FOUND WALKING ON THE PROPERTY AND WAS UNDER THE INFLUENCE
    OF ALCOHOL.

CLASSIFICATION CODE: STOPS & ARRESTS/STOPS FOR QUESTIONING/ALL OTHER STOPS
CLASSIFICATION CODE: CONTRABAND/ALCOHOL/UNDER THE INFLUENCE (ALCO)

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  * OFFENDER DATA *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

OFFENDER NAME: ██████████████
SSN: ████            DOB: ██████████         AGE: ███
SEX: ████            RACE: ██████            HEIGHT:
WEIGHT:              HAIR COLOR:             EYE COLOR:
    TONE:           SCARS/MARKS:
S    S: OUTSIDER
DRIVER'S LICENSE & STATE:
PERSONAL DESCRIPTION:

HOME ADDRESS: ██████████████

HOME PHONE:
WORK ADDRESS:
WORK PHONE:
OFFENSE COMMITTED: UNDER THE INFLUENCE 1.218(b) VA REG 16
DISPOSITION: RELEASED/NO FURTHER ACTION  CHARGING DOCUMENT:
OFFENSE COMMITTED: ENTRY INTO AREAS POSTED 1.218(b) VA REG 8
DISPOSITION: RELEASED/NO FURTHER ACTION  CHARGING DOCUMENT:
OFFENSE COMMITTED: ASSIMILATIVE CRIMES STATUTE 18 USC 13
DISPOSITION: RELEASED/NO FURTHER ACTION  CHARGING DOCUMENT:


WAS CIP WEAPON USED? NO
WAS POLICE BATON USED? NO

OTHER AGENCY NOTIFIED

DATE/TIME NOTIFIED: DEC 17, 2007@01:55
CONTACT PERSON: RADIO DISPATCHER
AGENCY: SPOKANE POLICE DEPARTMENT


USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 21



Case 2:08-cr-00040-CI    Document 25    Filed 07/03/08

DEPARTMENT OF VETERANS AFFAIRS                    Page    2
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 07-12-17-0151

VA Facility                                      Date/Time Printed
VAMC SPOKANE WASHINGTON                           DEC 17, 2007@04:00
Automated VA Form 10-1393


U.S. ATTORNEY NOTIFIED


* * * * * * * * * * * * * * * * NARRATIVE * * * * * * * * * * * * * * * * * *

        ORIGIN:

WHILE ON VEHICLE PATROL, I OBSERVED ██████████████ WALKING ON FREEDOM ROAD
TOWARD INDEPENDENCE ROAD NEAR BUILDING 7. I WAS INVESTIGATING FRESH
FOOTPRINTS NEAR THE BUILDING WHEN ██████ BEGAN WALKING WEST ON INDEPENDENCE.


        INITIAL OBSERVATION:

██████ WAS WEARING LIGHT BROWN PANTS AND A WHITE T-SHIRT WITH A BROWN
UNDERSHIRT. ████████ WAS SMOKING A CIGARETTE, AND WALKING FURTHER ON TO VA
PROPERTY ON INDEPENDENCE FROM LIBERTY.


        INVESTIGATION:

ON DECEMBER 17TH, 2007 AT APPROXIMATELY 0150 I WAS ON VEHICLE PATROL
HEADING WEST ON INDEPENDENCE ROAD WHEN I NOTICED FRESH FOOTPRINTS ON THE
SIDEWALK ADJACENT TO BUILDING 7. AS I EXITED MY PATROL VEHICLE WITH THE
EMERGENCY LIGHTS ON, I SAW ██████ WALKING TOWARD ME FROM FREEDOM ROAD
SMOKING A CIGARETTE GOING FURTHER ONTO VA PROPERTY ON INDEPENDENCE ROAD. I
VERBALLY IDENTIFIED MYSELF AS A VA POLICE OFFICER, INFORMED SERGEANT
WASHINGTON OF THE SITUATION VIA RADIO, AND ASKED ██████ WHAT HE WAS DOING
AND IF HE HAD ANY IDENTIFICATION ON HIM. ██████ HAD BLOOD ON HIS SHIRT, AND
A CUT ON HIS THUMB, WHICH HE CLAIMED WAS AN INJURY SUSTAINED EARLIER IN THE
DAY WHILE "WRESTLING AROUND" WITH A FRIEND. ██████ DID NOT HAVE ANY
IDENTIFICATION ON HIS PERSON, BUT WAS WILLING TO GIVE NAME AND DATE OF
BIRTH. WHEN ASKED AGAIN WHAT HE WAS DOING ON THE PROPERTY HE SAID, "I'M
LOOKING FOR MY BUDDY WHO'S ALL FUCKED UP FROM THE ARMY, I THOUGHT HE MIGHT
HAVE COME THIS WAY CAUSE, YOU KNOW" I ASKED ██████ IF HE WAS A PATIENT AT
THE VA, AND ██████ STATED THAT HE WAS NOT A VETERAN. I ASKED ██████ AGAIN WHY
HE WAS HERE, TO WHICH HE REPLIED, "LOOKING FOR MY BUDDY".  I THEN ASKED
██████ IF HE WAS CARRYING ANY WEAPONS, AND HE SAID THAT HE WAS NOT. I ASKED
██████ TO TURN AROUND AND PLACE HIS HANDS BEHIND HIS BACK, AND ██████
COMPLIED. I PERFORMED A TERRY FRISK AS SERGEANT WASHINGTON APPROACHED MY
LOCATION FROM FREEDOM ROAD. AS I WAS COMPLETING THE TERRY SEARCH, I NOTICED
A STRONG ODOR OF ALCOHOL EMITTING FROM ██████. I ASKED ██████ IF HE HAD BEEN
DRINKING, AND HE REPLIED "A LONG TIME AGO". I ASKED ██████ WHAT A LONG TIME
WAS, AND HE REPLIED, "LIKE 10 O'CLOCK." ██████ THEN STATED THAT HE LIVED
Y A HALF OF A BLOCK AWAY, AND WOULD LEAVE THE PROPERTY IF HE NEEDED TO.
I AGAIN INFORMED ██████ THAT HE WAS NOT UNDER ARREST, AND WAS ONLY BEING
DETAINED FOR INVESTIGATION. I THEN PLACED ██████ IN HANDCUFFS WHICH I DOUBLE
LOCKED AND CHECKED FOR TIGHTNESS. I OPENED THE DRIVER'S SIDE REAR DOOR OF

04/01/08 TUE 10:03  FAX  VA MC AUDIOLOGY                                      ☑002/002

DEPARTMENT OF VETERANS AFFAIRS                          Page    3
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 07-12-17-0151

VA Facility                                          Date/Time Printed
VAMC SPOKANE WASHINGTON                               DEC 17, 2007@04:00
Automated VA Form 10-1393

THE POLICE PATROL VEHICLE, AND ASKED ▇▇▇▇ TO SIT IN THE REAR SEAT, TO
WHICH ▇▇▇▇ COMPLIED. I THEN CALLED SPOKANE RADIO DISPATCH VIA TELEPHONE
AND REQUESTED A NAME CHECK ON ▇▇▇▇. ▇▇▇▇ CAME BACK AS AN ACTIVE
SUPERVISION WASHINGTON STATE DEPARTMENT OF CORRECTIONS FELON, BUT HAD NO
WANTS OR WARRANTS. I TOLD ▇▇▇▇ THAT I WAS GOING TO LET HIM LEAVE THE
PROPERTY, BUT WOULD BE ESCORTING HIM OFF OF THE PREMISES.

        DISPOSITION:

▇▇▇▇ WAS ESCORTED OFF PROPERTY IN HANDCUFFS IN THE PATROL VEHICLE. I
REMOVED THE HANDCUFFS FROM ▇▇▇▇, AND ASKED HIM IF HE HAD SUSTAINED ANY
INJURIES FROM THE HAND CUFFS. ▇▇▇▇ REPLIED AFTER LOOKING AT HIS WRISTS,
"NAH, THEY'RE JUST RED MARKS." NO FURTHER ACTION WAS TAKEN WITH ▇▇▇▇
SERGEANT WASHINGTON TRACED THE FOOTSTEPS THAT WERE ORIGINALLY BEING
INVESTIGATED, AND WAS LED TO A VAN IN LOT "D". SEE FOLLOW ON NOTES. IT IS
NOT CLEAR TO ME WHETHER THE FOOTPRINTS BELONGED TO ▇▇▇▇, OR IF HE WAS
INVOLVED IN ANY VEHICLE PROWLING OR OTHER ILLEGAL ACTIVITIES.

IAN J MCKINLEY   # 3462
INVESTIGATING OFFICER

Case 2:08-cr-00040-CI Document 25 Filed 07/02/08

DEPARTMENT OF VETERANS AFFAIRS       PAGE:   1
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 07-12-17-0151

V.  .cility                               Date/Time Printed
VAMC SPOKANE WASHINGTON                  DEC 19, 2007@04:05
Automated VA Form 10-1393

FOLLOW-UP NOTES:

    AFTER FOLLOWING THE FRESH FOOTPRINTS THROUGH THE PROPERTY IT WAS FOUND THAT
THE TRACKS LED TO A PATIENTS VAN PARKED IN LOT D IN A HANDICAPPED SPACE.
AFTER CHECKING THE VEHICLE IT WAS FOUND TO BE UNLOCKED WITH WIRING HANGING
OUT OF WHERE THERE SHOULD BE A RADIO. NOT SURE IF THERE WAS A RADIO IN THE
VEHICLE OR NOT. INFORMATION WILL BE PASSED ON TO CAPT. MCARTHUR FOR
FURTHER FOLLOWUP. VEHICLE WAS FOUND TO BELONG TO PATIENT ARTHUR W. FLETT IN
THE NHCU. OFC MCKINLEY: NOTIFIED WASHINGTON DEPARTMENT OF CORRECTIONS CCO2
DAN TURNER OF POLICE CONTACT WITH OFFENDER ON 121707.

CARL WASHINGTON  # 1126
FOLLOW-UP INVESTIGATOR

04/01/08 TUE 10:00   FAX   VA MC AUDIOLOGY                                    ☒018/025

ATTACHMENT #3

**VA** Department of Veterans Affairs    **VOLUNTARY STATEMENT - WAIVER OF RIGHTS**

cation: FREEDOM WA , SPCKANE VAMC                    Date: 16 FEB 08

I, the undersigned, ███████████████ , residing at or employed at ███████████

                                    SPOKANE
                                    VA
attest that a person who identified themself a POLICE OFFICER . has warned me and advised me of the following:

That I have the right to remain silent and I do not have to answer any questions or make any statements at all; that any statement I make can and will be used against me in a court of law for the offense(s) mentioned in the following statement; that I have the right to consult with a lawyer of my own choice before or at anytime during any questioning or statements I make; that if I cannot afford to hire a lawyer, I may request and have a lawyer appointed for me by the proper authority, before or at any time during any questioning or statements that I make without cost or expense to me; that I can stop answering any questions or making any statements at any time that I choose and call for the presence of a lawyer to advise me before continuing any more questioning or making any more statements. I understand these rights and I hereby waive my right to remain silent and my right to have a lawyer present while I make the following statement, knowing that I have the right to terminate any interview at any time hereafter and have a lawyer present with me before answering any more questions or making any more statements. if I choose to do so. I declare that the following voluntary statement is made of my own free will without promise of reward, without fear of physical harm. and without coercion by any person.

I ███████████████ am a witness of car prowl, and a theft on the lets hosp property. Jeremy evans, stole a heater that I belive was taken from the VA hosp parking lo I was stoped while looking for Jeremy cuz he was really Drunk and took off walking so I looked for him and he told me that he Broke into some cars in the VA ███ parking lot he has stolen in front of me some X-mas lights. But he never kept them, he is in trouble for Tresspassing on Shadle property, and possibly facing an assit. charge.

On/on about The date of 12/17/07

█████████████

Case 2:08-cr-00040-CI Document 25 Filed 07/02/08

ATTACHMENT #3

## VOLUNTARY STATEMENT - WAIVER OF RIGHTS
### (Continuation Sheet)

*Department of Veterans Affairs*

Statement of _____

I have read/have had read to me the above statement consisting of _____)_____ page(s), and certify that it is true and correct to the best of my knowledge.

No threats or promises have been made to me and no pressure or coercion of any kind has been used against me.

_____ 16 FEB 08
(Defendant) Signature Date

_____ 16 FEB 08
(Witness) Signature &c. Tani McKinsey Date

USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 26 Page 2 of 2

VA FORM 0023

ᴀᴛᴛᴀᴄʜᴍᴇɴᴛ  ꜰᴏɴ  ꭔ

## VA POLICE PRE QUESTIONING ADVICE OF CONSTITUTIONAL RIGHTS

*Prior to questioning any person suspected of, or possibly implicated as an accessory or principal in, a criminal act, the questioned person must be advised of his rights in the following manner:*

1. I wish to question you in connection with (state the nature of the incident being investigated).

2. Before I ask you any questions, you must understand your rights against self incrimination.

3. You have the right to remain silent and you are not required to answer any questions.

4. Anything you say can be used against you in a court of law.

5. You have the right to talk to a lawyer and have a lawyer present during questioning.

6. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.

7. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

8. Do you understand each of these rights?   ☒ Yes   ☐ No   _____ (Initials)

9. Do you wish to answer questions?   ☐ Yes   ☒ No   _____ (Initials)

VA FORM
MAY 1992(R)   **1430**

FoN I

*If the response to 9 is yes, the person to be questioned must sign the Waiver of Rights below. If response is no, the person will not be questioned. If the person requests the presence of his lawyer or the appointment of a lawyer, he will not be questioned by a VA Police Officer.*

**WAIVER OF RIGHTS**

I have been advised of my rights and I understand what my rights are. I am willing to make a statement and to answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

| | SIGNED |
|---|---|
| WITNESS | PLACE |
| WITNESS | TIME          DATE |

USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 28

ATTACHMENT FON 2

**VA POLICE PRE QUESTIONING ADVICE OF CONSTITUTIONAL RIGHTS**

*Prior to questioning any person suspected of, or possibly implicated as an accessory or principal to, a criminal act, the questioned person must be advised of his rights in the following manner:*

1. I wish to question you in connection with (state the nature of the incident being investigated).
2. Before I ask you any questions, you must understand your rights against self incrimination.
3. You have the right to remain silent and you are not required to answer any questions.
4. Anything you say can be used against you in a court of law.
5. You have the right to talk to a lawyer and have a lawyer present during questioning.
6. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.
7. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

8. Do you understand each of these rights?  ☒ Yes  ☐ No   JE   (Initials)
9. Do you wish to answer questions?  ☒ Yes  ☐ No   JE   (Initials)

VA FORM
MAY 1980(T)   **1430**

USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 29

FoN 2

*If the response to 9 is yes, the person to be questioned must sign the Waiver of Rights below. If response is no, the person will not be questioned. If the person requests the presence of his lawyer or the appointment of a lawyer, he will not be questioned by a VA Police Officer.*

**WAIVER OF RIGHTS**

I have been advised of my rights and I understand what my rights are. I am willing to make a statement and to answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

SIGNED _Jeremy Evans_

PLACE _Spokane VA RM 13253_

TIME _1249 pm_   DATE _23 FEB 08_

WITNESS

WITNESS

04/01/08 TUE 10:02   FAX  VA MC AUDIOLOGY                                      ☎024/025

Attachment Four 3

**Department of Veterans Affairs**   **VOLUNTARY STATEMENT - WAIVER OF RIGHTS**

Location: SPOKANE VAMC 4815 N. ASSEMBLY SPOKANE, WA 99205   BLDG# I   Room 3102    Date: 23 FEB08

I, the undersigned, JEREMY C. EVANS , residing at or employed at ▮▮▮▮

attest that a person who identified themself a POLICE OFFICER , has warned me and advised me of the following:

That I have the right to remain silent and I do not have to answer any questions or make any statements at all; that any statement I make can and will be used against me in a court of law for the offense(s) mentioned in the following statement: that I have the right to consult with a lawyer of my own choice before or at anytime during any questioning or statements I make; that if I cannot afford to hire a lawyer, I may request and have a lawyer appointed for me by the proper authority, before or at any time during any questioning or statements that I make without cost or expense to me; that I can stop answering any questions or making any statements at any time that I choose and call for the presence of a lawyer to advise me before continuing any more questioning or making any more statements. I understand these rights and I hereby waive my right to remain silent and my right to have a lawyer present while I make the following statement, knowing that I have the right to terminate any interview at any time hereafter and have a lawyer present with me before answering any more questions or making any more statements, if I choose to do so. I declare that the following voluntary statement is made of my own free will without promise of reward, without fear of physical harm, and without coercion by any person.

I was walking from my house. on the night of the theving I was walking down the street to get some sigerits and decided to go to the VA and has been drinking and got a heater and a stareo out of 2 different vehicles after that I was walking down the street and got home and diden't have the stare5 but the heater will be returned imedeitly on 2/23/08

I idmit that I stoll the items from the VA proporty

X _JE_
*Declarant Initials*

USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 31

Page 1 of _2_

VA FORM 0023

04/01/08 TUE 10:02  FAX  VA MC AUDIOLOGY                                    ☐025/025

**VA** Department of Veterans Affairs

# VOLUNTARY STATEMENT - WAIVER OF RIGHTS
### (Continuation Sheet)

Statement of ŦVAN.S. JEREMY C.

I have read/have had read to me the above statement consisting of ___2___ page(s), and certify that it is true and correct to the best of my knowledge.

No threats or promises have been made to me and no pressure or coercion of any kind has been used against me.

_Jeremy Evans_
(Declarant) Signature

_____
(Witness) Signature

2/23/08
Date

2/23/08
Date

USA v. EVANS - Unsupervised Deferred Prosecution Agreement - 32  Page 2 of 2

VA FORM
0023